The case that we have before you is one that is not new to this court. It's one that has been seen time and time again. Immigration, formerly immigration, now the Department of Homeland Security, was faced with a significant problem, and that is people would not show up. Aliens who were in removal or deportation proceedings wouldn't show up to court. They'd miss their appointments to be in front of the judge, and years later they would show up with a motion to reopen. In response to that, we've obviously seen changes that have come through as a result of congressional legislation. We've seen changes come through, and it's become more and more difficult to set aside an order for a failure to appear once an alien has missed that court hearing. In this case, we have an individual who applied for asylum, as the court knows, applied for asylum in 1993. By 1995, the application for asylum had been denied, and by 1996, this individual had missed his court hearing and, in fact, was ordered deported in absentia by the immigration judge. The question here is that we have the first attorney filing the asylum application has been discarded. He's no longer a member of the Bar of the State of California. In fact, he's had other difficulties that were related to criminal activities, and he is no longer practicing. The second attorney that took this case over is the one that actually filed a notice of intent to deny the asylum application, and I think that's where this case actually focuses. That is, here you have an applicant for asylum, goes in with one attorney. The next thing you know, that attorney is out of the picture. He hires a new lawyer. That lawyer then files a notice of appearance with the asylum office, and he submits in August of 1994, he submits what would be a rebuttal to the notice of intent to deny that asylum application, and files his notice of appearance with the asylum office. Not until March 1995 does the agency finally make a decision, and they issue an order to show cause in March of 1995. The   of intent to deny the asylum application, and I think that's where it focuses. It's only on the – it appears it's served on Mr. Mangabat. It's mailed to him, to the address that was listed. What Mr. Mangabat does not receive, and the reason there's a failure to appear is he does not receive the notice of hearing. What we know from the excerpts of record is that he does not receive the notice of hearing. Can I just – maybe you understand these documents better than I do. Although I've seen quite a few lately, I'm still not intimately familiar with all these documents that the INS utilizes. But if you turn to the – to the – I guess it's the letter of March 9th, 1995, that I think enclosed the order to show cause. All right. You are at the exhibit. Let's see. Exhibit G of your set of documents. Yes. Now, is it – do I understand this document that the order to show cause was included in the envelope? That's my understanding. Okay. And is it also – is it also your understanding that the CC on the letter means that both the letter – and I guess we can presume, I don't know that we can, but you would think that the order to show cause would have been included in the CC to Mr. Fumar. Yes. Is that correct? Is that – is that the way you read these documents? That's what – that's what I see as well. Okay. All right. So then that's – So then your point is, is that on the order to show cause, and in the letter, it says that future notice will be given. That is correct. And then that gets us to? March 29th. March 29th. And that's the date that the agency, the office of the immigration judge, actually stamped the order to show cause. March 29th is the date of the notice of hearing was sent. And if we look at the date of the order to show cause, the stamp on it, that would be – it's – it would be in our exhibits, Exhibit H, and the date stamp is actually turned upside down, so you'd have to – That's March 28th? March 28th, 1995. Received at Justice. I guess to try to cut through it, we're trying to figure out if this case looks like a simpler case, Arietta. In other words, the statute says you can give notice either to the individual or to counsel. So if notice is permitted to the individual and it was sent to this individual's last known address and signed for by someone who we know is not Mangabat de Guzman, does that comply with the statute and the regulation? And our position would be that this case is more like Aurelian Dobrata, and where this Court found that, you know, I think the characterization is – it's an Aurelian odyssey that we have. You know, we have – we have a situation where you have an individual going to the asylum office. There's a blue form that's a notice of appearance that by the time you get to the immigration court, it has to be a green form. And the agency in Dobrata argued, look, if the attorney has not filed that green form, we don't really – we don't have to give him notice. This Court found that we can't place such a mechanical – we can't impose such a mechanical procedure for notice to the – in order for the attorney to get notice. If you've – if you're representing the alien before the asylum office – And here's what's a little confusing to me. Maybe you can help sort this out. In this case, the attorney is Mr. Fumar, correct? Correct. As of August of 94. Your client says that Mr. Fumar did not get this. The notice of hearing. The notice of hearing. The notice of hearing. Mr. Fumar got the intent to deny, but didn't – an order to show cause, but did not get an actual notice of hearing. And what we know for a fact – Okay. So let's put that aside. Let's say, okay, that's – and there's nothing to suggest otherwise. He didn't get the notice of hearing. Now we go to your client. Did your client offer any evidence that – as to somebody not being a responsible party signing or that not being his address or anything under Arietta that would, in effect, kind of raise a rebuttable presumption shifting the burden to the service on the certified mail to Mangabat Deguzman's last known address? Other than what we have as part of the record that the Board of Immigration Appeals found was the return receipt notice that was not signed by our client, by Mr. Erickson. It was signed by someone, as though we know. Signed by someone. Okay. Other than that document, we don't have anything else besides that. But I think that this case aligns more with Dobrata, because in this case you have an attorney almost a year before this case has an order to show cause issued. And we also know that that order to show cause and the notice of hearing went out on separate dates, because the receipt that was signed by someone other than the Petitioner is in the – I believe it's March 9th, and the stamp on the actual order to show cause that's filed with the court and the notice of hearing for that June date occurs after the 28th of March. Do you want to save any time? You have about 30 seconds for rebuttal. I'm sorry. You have about 30 seconds left. Do you want to save it for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honor. I'm a clerk at the State Department, and I'm here to ask a question on the Petitioner. I'm asking a police court. Notice of Petitioner's deportation hearing was served on Petitioner in accordance with the statute, and the Board of Immigration Appeals' denial of Petitioner's motion to reopen was thus proper. Okay. Let's, as Judge McEwen said, let's try to get to the heart of this. And the question is, how does this differ from de Broda, and does that difference really matter? The difference basically, as I understand it, is that in de Broda, the person had moved, which under the law doesn't really make any difference. And in this case, the person had no evidence that he'd moved, but the notice that was addressed to him was received by some third party, who we don't know anything about, but signed it. That's the basic difference. In neither case was the notice of the hearing served on counsel. And is that an accurate description of the two cases? Well, I guess, first, Farhoud and Arriada, we would argue are more applicable to this case. No, no. I'm asking about de Broda. The difference between de Broda and this case is, as I understand it, and I'd like to know what else there is, is that in both cases, no notice was given to counsel. And in both cases, the individual did not sign for the letter. In one, it was a third party. In the other, it was returned. And in the de Broda case, he failed to notify the agency of his change of address, which, according to our basic cases, doesn't matter because you have an obligation to do that. Is there some other difference between the two cases? We would say there's a couple of other differences, Your Honor. Okay. In de Broda, the court indicated that the petitioner had actually moved from that address. In this case, there's no evidence of that. Okay. I said that before, that he had moved. He was gone, but he had not notified them. That's correct. That's the difference I pointed out. He had moved but not notified them. Correct. And here there's no indication whether or not he actually did move or not. Right. In de Broda, the petitioner's asylum counsel had been served the OSC form. Here, before the BIA, the petitioner argued that the asylum counsel had not been served the OSC. The board found that it probably had because there was a CC on the denial letter. Okay. So we'll take the board's word for it that the CC shows the counsel had been served. Okay. In addition to that, the asylum counsel was ultimately served the deportation order, whereas in this case it was not, which seemed to, in some sense, the court in de Broda seemed to be looking at all the various ties to the asylum counsel and they looked at that as one other tie. The court also in de Broda seemed to rely on the fact that the alien reasonably could have understood that the order to show cause indicated that notice would be provided to the asylum counsel. Here there's no evidence in the record that the petitioner had any basis to rely on that. He, although the petitioner initially had indicated before the IJ and the board was that he didn't know that he had to provide a change of address. However, the denial letter that went to the petitioner indicated you've got to provide a change of address, as did the order to show cause. Well, is the language that the court in de Broda found to be confusing or opaque the same language that is in the order to show cause here? That is the same language. There wasn't a discussion about a denial letter in de Broda. We would respectfully disagree with de Broda as well for ignoring two parts of the statute, one being the requirement that the alien has to provide a change of address. The court in de Broda just basically ignored that. They also ignored the provision in the statute which says that if the alien doesn't provide his change of address, no notice is even required. So we would suggest that, you know, de Broda in ignoring those was incorrect. And certainly here. Okay. So this case would seem, even if we were to say, you know, obviously we can't say the de Broda court was wrong because that's not our province. But even if we were to say they should have looked more carefully at those points that you make, which are legitimate points under the statute, I think, the difficulty here is that here's a fellow who lives at this address, but he's still faced with this ambiguous language about who's actually going to get the notice. And in the end, unlike in de Broda, Mr. Fumar didn't get the notice of the hearing. Is that correct? Mr. Fumar is the attorney, the asylum attorney. He did not receive the notice of hearing in either de Broda or in this case. However, the court in de Broda appeared to be relying on their belief that the Petitioner had a basis to rely on the statements in the order to show cause. Here there's no indication that the Petitioner relied on any statements in the order  There's no indication. Well, Mr. Fumar had filed his notice of entry of appearance before the INS, though, on the asylum application, correct? That's correct. That's correct. But, I mean, there's nothing in the record to suggest that. We can't assume that he was still representing the Petitioner? I wouldn't go that far. I mean, de Broda seems to suggest otherwise. Your argument? Why would we send Mr. Fumar a notice of the order to show cause if he wasn't counsel of record? The denial letter of the application was sent to Mr. Fumar. And he was a CC on that. And the order to show cause was included in it because it was the next step in the proceedings and they were both sent out in the same day. You know, as I understand your argument, I think what you were just saying is that the de Broda court was saying that the individual who receives the order to show cause, I guess even though he moved, was read the order to show cause and assumed from that that his lawyer would get the notice of appearing, that he was relying on the language in the order to show cause. That's what the court in de Broda seems to suggest, Your Honor. But don't we, you presume receipt when somebody moves, even though he doesn't get it, because legally he has received it. Don't you have, I mean, this, the law and particularly this area is full of presumptions. If we're going to presume receipt of the notice, shouldn't we presume for legal purposes receipt of the order to show cause, which would then mislead him? The, I think the court in de Broda, in finding that it misled him, the Petitioner may have actually argued he relied on the statements in the order to show cause and therefore he believed his attorney was going to get it. That has not been argued here. All that was argued here was Petitioner indicated he didn't know he had to provide a change of address. Now, the denial letter specifically told him he had to. The order to show cause. I'm still entitled to rely on what the order to show cause says. I mean, you're going to hold him to the order to show cause or to any notices he doesn't read. Shouldn't you be held also to the fact that the notice you gave him, whether he received it or not, was misleading? We don't believe it was misleading. No, no, but the de Broda court thought. Right. Again, but I think they. So that you presume that he has the right to think that his lawyer is going to be the one to tell him, which he might have assumed just from the fact that he has a lawyer that which might have been a wrong presumption. Right. And I don't think there's anything in de Broda to suggest that there's this general presumption that just because you receive a document, you get to assume your attorney is going to get it. I mean, they seem to go beyond that and seem to be suggesting there was something specific in the facts there. And I don't think there's anything in the facts here. Well, what's the fact is that that's the system because that's what the order to show cause leads people to believe, according to de Broda. But this Court in Farhood and this Court in Ariadna has specifically said notice is sufficient if it goes to the last address provided by the petitioner. It's also said that due process is not violated because as long as notice is sent in a way reasonably calculated to reach the. You assume the person receives the notice. Correct. Okay. You assume he received the order to show cause, which, according to de Broda, tells him he can rely on his lawyer. And again, Your Honor, I think de Broda only says that to the extent they found there that there was a basis for the petitioner to believe that his attorney was going to receive the notice. Here there's no indication of that in the record. And the petitioner specifically was told in the denial letter that was received the same day, you need to provide a change of address. And the statute was created to prevent the type of situation where a petitioner can just say, I didn't get it, so therefore I didn't have to show up. I mean, this wasn't until seven years later that all of a sudden he moved to reopen. You know, the denial and the order to show cause were served in March of 95, so it was many, many years that had gone by. And, you know, the holdings in Farhood Imagiani, even though Imagiani has been vacated, it was on other grounds. Imagiani was issued subsequent to de Broda, and Imagiani, the Court found, notice was sufficient if it was sent to the last known address. And Imagiani ---- But that wasn't an issue of whether he could rely on his counsel. No, but in Imagiani there was an indication that there was counsel. So, I mean, it was not something that was specifically argued. It's not up here. But there was indeed ---- What it says is what we've always said, you know, that the notice to the individual is enough if he doesn't tell you about the address. But that's the question is if he's ---- if the notice says to him, as the de Broda court said, you may rely on your attorney. If you then come to court and say they didn't give it to my attorney, that hasn't been changed as far as I know since de Broda. But the statute as it's written does not say you need to provide notice to the attorney. The statute says the Petitioner gets it or his counsel may get it if there is any counsel. And the statute specifically says if the Petitioner doesn't provide his change of address, notice isn't even required. And de Broda ignored that portion of the statute. We keep talking about a change of address. I guess we don't know that he changed addresses, right? No, we don't. And so in a way it's kind of are in this limbo. He says he didn't get it, but it was sent to his last known address, so it met that part of the statute. Correct.  So, Ben, what I'm trying to figure out is, well, under Arrieta, that would seem that would be sufficient. However, you have to read Arrieta, it seems to me, in concert with de Broda, and that gets you back to what happens if under the statute notice is sufficient, but the form's notice to him is sufficient because it was sent to his last known address at Bellwood or whatever, Bellwether Court. If that is sufficient, but then our case law says the forms themselves are misleading, what do we do between de Broda, the statute, and Arrieta? And I would argue that in de Broda the Court was suggesting that in that specific case Petitioner relied on the order to show cause and found it misleading. Here there's absolutely no evidence of that. All the Petitioner had said was, I didn't know I had to provide a new address. Well, the denial letter told him he had to provide a new address. The order to show cause told him he had to provide a new address. Why he's saying he didn't know he had to provide a new address, we don't know. There's no evidence in the record of that. And I think de Broda is distinguishable, because the only basis for why I think the Court in de Broda could come out the way it did was because it determined that the Petitioner there had relied on the order to show cause to suggest that, you know, providing the address to the attorney was sufficient because the attorney would get further notices. But keep in mind as well, before the board, I mean, the Petitioner initially argued that the attorney didn't even get the order to show cause. So for him to argue. Kagan. There's inconsistency. Right. There's a lot of inconsistencies here. So it's, you know, the long and short of it is that Farhood and Arrieta seem far more applicable because it's a situation where the statute was complied with and it's a situation where due process was complied with because notice was provided in a manner reasonably calculated to reach the Petitioner. The petitioner. You know, de Broda does not treat the statute any differently from the language in the order to show cause. De Broda says the language in the statute and in the INS's own regulations support their understanding that you have to give the future communications to the attorney. You know, if the Court misunderstood the order to show cause, it also misunderstood the statute. Well, and as I. It seems to me a basic problem is with de Broda. I do have a problem with de Broda. And as I said, I think the Court in de Broda also ignored the provisions of the statute. It didn't. It referenced one of them, but not both of them. But it ignored that an alien has to provide his new address. And if he doesn't, he's not even required to be provided notice under the statute. And to add an additional burden onto that that's not in the statute to say in addition that you've got to provide it to the attorney, well, the statute doesn't say that. And de Broda found that notice had to be provided to the attorney, but we've got to the only reason I can base that on is because there they decided the Petitioner had relied on the order to show cause to believe that notice would be provided to his attorney. So you agree that if he had gotten the notice, if the alien here had received the order to show cause, he'd fall within de Broda? If the alien had received the order to show cause? Yes. There's no indication here. The alien never argued that he didn't receive the order to show cause himself. Well, then why didn't he rely on the order to show cause here, too? Here. I thought you said he didn't rely on the order to show cause. He didn't say that his attorney had provided it. What all he said, I mean, it was very vague and ambiguous about it. All he indicated was I didn't know that I had to provide a new address. He indicated that the letter and the OSC were mailed to him. No, no. I'm sorry. Maybe I misunderstood something. I thought you said the difference was that in de Broda the alien relied on the order  It's confusing language. That the order to the order to show cause. Well, that's what I think the Court was suggesting. Yes. The difference that I said was that in de Broda the the court had said that the attorney was provided the order to show cause, whereas in this case petitioned before the board. No, no. Forget that. Forget. Let's assume for the purpose of this discussion the attorney did receive it as the board said and as the record indicates with the CC. Okay. Now, the alien in de Broda, I thought you were saying, had a right to, according to the court, to rely on the order to show cause, which says that he has a misleading language. I wouldn't say the court said the alien had a right to. I would phrase it more in terms of I think what the court was suggesting was that in that specific case the alien did rely on the order to show cause. And here there's no evidence that the alien did rely on the order to show cause. Not that he relied on the order to show cause. It's that he didn't say that he was anticipating that his attorney would receive notice. Correct, Your Honor. Correct. Which he gets from reading the order to show cause, I think. Arguably he could, but that's not something that he suggested here or argued. Okay. So the real difference you're not saying, I guess, between the two cases is that here you have no evidence from the attorney that when he got the order to show cause he relied on it. I mean, we talked about a few different differences, but the main one that you're   And I think that's the difference between the two cases. Yes, I would agree, Your Honor. And just to be clear, does the record say or did Mr. de Guzman ever say whether or not he received the order to show cause? No, Your Honor. Okay. What he said in his briefs to this Court was that the letter was mailed to him and the order to show cause was mailed to him. And then subsequently he indicates that the order to show cause and the notice of hearing were served upon him, but he didn't receive them. So it's unclear whether he's trying to suggest that he got the denial letter and the order to show cause attached to it when it was mailed to him. He doesn't specifically say it, but then later he's saying, well, when it was served by certified mail, he didn't receive them. So it's not clear what he's really arguing or what really happened. Okay. Thank you very much. Thank you. Can you clear up, in the record, does your client say anywhere whether or not he received the order to show cause? My at this point, Your Honor, I mean, after all of this time, my understanding is that he did, in fact, receive the order to show cause, that he, in fact, received the order to show cause at some time after. Is there any record on any of this? Where would I look to figure that out? Actually, there is no transcript that's provided of the. I mean, normally, if you don't get notice, you put in an affidavit and you say, look, I never got this thing. My lawyer didn't get it. I either did or didn't move. You know, this is an illegible signature on the certified mail, and you shouldn't nail me with that. I'm just kind of at a loss here because I can't even figure out the facts. We don't have anything from your client. There is the declaration that accompanied the motion to reopen, Your Honor. There he says he didn't receive the notice of hearing. That's all we know. I didn't get the notice of hearing. He did not receive the notice of hearing. Okay. And from where we look at this case. So let me ask you about that. If all he says is I didn't get the notice of hearing, how could we base our decision on whether or not he was misled by the order to show cause when we don't know if he got that? Because Exhibit H, when it's signed off by the officer that mailed this particular order to show cause on the fourth, I believe it's the fifth page, he indicates this order to show cause was not read to the alien, to the named alien in Tagalog. There's a recognition there that there's a, that at least that this is for our client that this is going to go, this is going to be mailed and the notice will be mailed as page four indicates. If you are represented notice. I'm not probably being very precise in my question. He didn't get the notice of the hearing. That's correct. And it went to his address signed off by Mr. X. We don't know if he got the order to show cause, but if he didn't get the order to show cause, how could he be misled by it? In other words, he says he didn't get the notice of hearing because it went to this address and was signed off by Mr. X. Same thing occurred with the order to show cause. It went to that same address and got signed off. How could we say he was misled if he didn't get it? Wouldn't we have to figure out some other framework to look at the case? I think the Verrata provides us a broad enough framework so that we are looking at the order to show cause so that there's not. Like even if you didn't get it? Is there any denial that he got it? Is there anything in the record that suggests he didn't get it? The Board of Immigration Appeals concludes that the signature is not the same, one and the same at least, and that the immigration judge erred in making that finding and denying the motion. That's what we do. We know that it wasn't his signature. Yes. But does he ever contend that he didn't get the order to show cause? Nothing in the record that suggests that he ever. So then should we presume that he did receive it? I think that even if the court were to presume, I mean, with all the presumptions that are going on, even if we presume. No, no, I didn't ask you even if. I just asked you whether we should presume. Your time is up by three minutes, and it was a yes or no, but we'll take it as a maybe. Thank you. Okay. Case just argued.
judges: Reinhardt, McKeown, Paez